In re THOMPKINS McINTIRE ESTATE.

(Sitka. August 17, 1894.)

.No. 405.

1. APPEAL AND ERROR—PLEADING.

A commissioner sitting as a probate judge should pass upon a demurrer to a petition to remove an administrator before hearing the cause on its merits and allowing an appeal.

2. ESTATES—ACCOUNTS—ADMINISTRATOR—REMOVAL.

A petition for the removal of an administrator should be heard as a distinct and separate proceeding from the settlement of his accounts.

3. APPEAL AND ERROR—ADMINISTRATOR—ESTATES—REMOVAL.

The District Court of Alaska, while exercising jurisdiction according to the laws of Oregon, will exercise its supervisory control over a proceeding in the probate court for the removal of an administrator through an appeal.

Motion to Dismiss an Appeal from the Probate Court.

Johnson & Heid, for appellant.
John S. Bugbee, for respondent.

TRUITT, District Judge.   As shown by the petition for
letters of administration, the said Thompkins McIntire was
a resident of Juneau, Alaska, where he died, intestate, on the
2d day of March, 1888, and unfortunately left a small estate,
consisting wholly of personal property, of the probable value
of $600.   The records in the matter show that John G. Heid
was duly appointed administrator of said estate by the com-
missioner at Juneau on the 5th day of March, 1888; that he
qualified at once, entered upon his duties, and has been act-
ing as such administrator ever since.   The inventory was
made and filed, some of the debts were collected, and the
claims against the estate all paid.   I infer that the personal
property was sold, though the records do not show any peti-
tion for the sale of it, any order of the court authorizing its
sale, or any report in relation thereto.   An administrator
has no right to sell property of an estate without an order
of court directing the sale thereof, and, unless at public
auction, no property shall be sold for less than its appraised
value.   The administrator in this case filed several accounts
showing the condition of his trust from time to time, but it
seems to me it should have been finally settled and closed as
soon as he paid all legal claims, so far as presented, after dis-
posing of the property and collecting all the debts due the
estate which could be collected.   In transacting the business
of an estate, where his course is not prescribed by law or di-
rected by the court, an administrator is required to exercise
the same degree of diligence and caution that a prudent man
would exercise in transacting his own business, and no more.
If the decedent in this case left any heirs at law, they were
unknown at the time letters of administration were issued,
and have not been found since.   This is probably the reason

why the administration has not been closed, and the affairs of the estate in connection therewith finally settled; but I do not think this alone is a valid reason for such a course. In Oregon the law is that, when the administration of an estate has been completed, and its assets are ready for distribution, when there are no known heirs who do not claim the same within six months thereafter, the administrator shall settle the matter finally, and pay the net proceeds into the treasury of the state, where they are placed with the escheat fund. Now, the organic act (23 Stat. 24, c. 53), providing a civil government for Alaska, makes the clerk of the District Court ex officio secretary and treasurer of this district, and I suppose the net proceeds of an unclaimed estate might be paid over to him by order of the commissioner six months after final settlement of the accounts of the administrator. However, this administration seems to have been allowed to drag slowly along, without anything to break or disturb the monotony of its course, until December 11, 1893. At that date Commissioner Hoyt issued an order to the administrator, directing him to file his final account with said estate within five days from the date of service of said order, and this was the beginning of trouble in connection with the matter. The administrator did not file such an account as the court directed, and thereafter, on January 18, 1894, John S. Bugbee was appointed as attorney to represent the "next of kin and minor heirs of said Thompkins McIntire, deceased," etc. As there were no heirs or next of kin of the deceased known, this was rather an unusual proceeding, especially as the estate is very small, and in no way complicated. On the 23d day of April, 1894, the said John S. Bugbee presented to the Commissioner's Court a petition charging the administrator with carelessness and neglect in the business of said estate and unfaithfulness in his trust, to the probable loss of the heirs thereof. This petition is quite

lengthy, and specially names a number of cases and facts going to show the neglect and want of diligence of said administrator. A citation was thereupon issued by the commissioner directed to the said John G. Heid, administrator, requiring him to appear on the 26th day of April, 1894, and show cause why the prayer of said petition should not be granted. On that day said administrator appeared, and filed a paper in form of a motion, but it is more in the nature of a demurrer; in fact, it is a demurrer. It asks that the petition be dismissed for the following reasons:

. "(1) That said John S. Bugbee appears in his own person, and is not a person interested in said estate, and as such is the applicant herein; (2) that it does not appear by said petition that there are any heirs of said deceased in existence whom the said John S. Bugbee pretends to represent; (3) that it does not appear by said petition that anything complained of by said John S. Bugbee in said petition will cause injury to, or may prove a probable loss to, the applicant."

The Oregon law in force in this district gives seven grounds of demurrer, and two of them are substantially set up in this pleading, to wit, "that the plaintiff has no legal capacity to sue," and "that the complaint does not state facts sufficient to constitute a cause of action." It does not appear that this pleading was overruled or disposed of in any manner, but without any action upon it, and without any answer to the petition being filed, some kind of a trial before the court took place, which resulted in a judgment or decree removing said administrator from his trust. It also goes further, and adjusts his accounts with the estate, but I am unable to determine the result arrived at from the figures given in the judgment. By it the administrator is charged with the aggregate sum of $757.63, and credited with $150 for fees and $50 paid by order of court to John S. Bugbee, leaving, as is stated, a "net balance due the estate from said

administrator of $557.63." This is all plain enough, but the record further states "that, through the negligence of said administrator, several accounts of the estate have become outlawed, but some of which may yet be collected." Now, these accounts should be specified, and, if the intention was to charge them against the administrator, it should be so stated. Again, the record sets out "that, aside from the ex-- pense of last sickness and burial, and cost of administration, and the claim of Bennett, the claims were paid without being verified by claimants, but were paid in good faith, and are here now allowed." This is so indefinite that I cannot un- derstand what accounts are referred to, nor the amounts of credit the administrator should have. But, if entitled to any credit from these accounts, then there is error in the net balance which is declared to be due the estate. However, it was error to try the case, or to give any judgment, without first passing upon the demurrer interposed by the adminis- trator. Hestres v. Clements, 21 Cal. 425. And, whether treated as a motion or a demurrer, it should have been dis- posed of before trial and judgment. After this, the defend- ant should have been allowed to file his answer to the peti- tion in case the demurrer was overruled. If he refused to answer, there would be no need for a trial on the merits, as the allegations of the petition would then stand admitted. Furthermore, the allegations of the petition are specific, and the object of the same is the removal of the administrator, and, if denied by an answer, then the issues to be tried would have been made by such allegations and denials, and the matter should not have been complicated by an accounting between the administrator and the court. The accounting should have been conducted in a separate proceeding. The mode of proceeding in any probate case is in the nature of a suit in equity, as distinguished from an action at law. Hill's Ann. Code Or. § 1078. In a case like the one I am

now considering, it would be best to take the evidence in writing, as that would save time and expense of witnesses if an appeal should be taken. There are two well-considered cases involving questions similar to this in the Oregon Reports. Ramp v. McDaniel, 12 Or. 108, 6 Pac. 456, and In re Holladay's Estate, 18 Or. 168, 22 Pac. 750.

And now, after this somewhat lengthy statement and criticism of the case as shown by the record before me, I come to the consideration of it with reference to its standing in this court. The defendant has attempted to perfect an appeal, and in that way bring the case here, and the plaintiff has filed his motion to dismiss the appeal, in which the following grounds are specified: "(1) That this court has no jurisdiction on said appeal; (2) that the said order is not appealable."

This motion has been argued and submitted to me for consideration and disposal. On the argument of this motion it was urged by the plaintiff that whatever jurisdiction this court has over the orders and judgments of Commissioners' Courts when made in probate proceedings is conferred by section 5 of the organic act, in which it is declared that these courts shall have jurisdiction in all testamentary and probate matters, "subject to the supervision of the district judge." And it was argued that, as no mode of exercising this supervision is given by said act, therefore this part of it is in fact void for uncertainty; or, even though it may give some kind of jurisdiction in cases of flagrant error or gross abuse of discretion, it does not give appellate jurisdiction in cases like the one at bar. The defendant contended that this court is empowered by said section 5 of the organic act to take cognizance of such cases, but admitted some doubt as to whether its jurisdiction should be invoked by appeal or by a writ of review. The language of the organic act under consideration is not ambiguous or uncertain. An examina-

tion of textbooks, statutes, and decisions touching the matter will show that the word "supervision" or the phrase "supervisory control" are commonly used to designate the jurisdiction of a higher court over an inferior one, and especially when referring to the actions of the latter in probate matters. Section 9, art. 7, of the Constitution of Oregon, declares that the circuit courts of that state shall have "appellate jurisdiction and supervisory control over the county courts and all other inferior courts, officers, and tribunals." And in the opinion in Re Holladay's Estate, supra (at the bottom of page 171, 18 Or., and page 751, 22 Pac.), in speaking of the powers of the county court over executors and administrators, Judge Strahan says, "It is not absolute or arbitrary power, but is subject to the supervisory control of the circuit court." If, therefore, the only law relating to the subject was confined to the section referred to, then I think this court would clearly have jurisdiction in such cases as the one now under consideration, but whether it should be invoked and exercised by way of an appeal or by a writ of certiorari or review would be a question that would have to be settled by rules of practice. It seems to me that counsel on neither side gave the case a very careful examination, or they would have noticed that section 7 of the organic act has an important bearing upon it. This section provides:

"That the general laws of the state of Oregon now in force are hereby declared to be the law in said district, so far as the same may be applicable and not in conflict with the provisions of this act or the laws of the United States."

This is the very section which provides the mode of procedure for commissioners when exercising jurisdiction in all testamentary and probate matters, by adopting the Oregon laws then in force upon the subject. And it also furnishes the key to the way in which the "supervision" mentioned in section 5 of said act shall be exercised. The Oregon

laws provide that the circuit court shall have supervisory control over the county court by appeal, review—which is in the nature of the common-law writ of certiorari—and mandamus, respectively. And as these laws were by the organic act adopted for this district, they are applicable here when it is sought to appeal from or review the proceedings of a Commissioner's Court, or when such officer fails or refuses to perform an act or duty resulting from his office. Under the laws of Oregon, appeal and review are not concurrent remedies, and which is the proper one in any given case must be decided by the interested party at his own peril. Ramsey v. Pettengill, 14 Or. 207, 12 Pac. 439. But under the law and the decisions thereon these remedies are plainly distinguishable, and it is unnecessary, in passing upon this case, to consume time in pointing out their distinguishing features. I will only say that, if the proceedings herein had been regular in the court below, and the administrator removed, then, if dissatisfied, his remedy would have been by appeal to this court. In other words, I hold that the Oregon laws on appeal and review apply to this district, that the order or judgment entered against said administrator is of the appealable class, and that, if perfected as by law required, the appeal in this case would lie. As to whether this appeal is perfected in the manner prescribed by law, is a question that I do not decide at this time, for the reason that the issues were not properly made up in the court below, and therefore, even if the appeal is regularly here, I could not very well try the case. Furthermore, on the argument of this motion, it was stated by counsel that the question of the proper remedy for the party seeking it from an order or judgment of a commissioner while acting in probate business is a new one, which has never been brought into this court, and I have thought I ought not, for this reason, to be technical in the matter, but could so dispose

of it that substantial justice may be done to all parties concerned. There are two provisions of the Oregon Code which authorize the county court to remove an administrator or executor—sections 1094 and 1100. The former section authorizes it upon the application of any heir, legatee, devisee, creditor, or other person interested in the estate; and the latter section would seem to authorize the court to remove him upon its own motion, though the grounds of removal are the same in both cases. I think a commissioner in this district might, under these sections, remove such officer from his trust, if warranted by the facts.

The motion in this case might have been disposed of very briefly, but, for the purpose of settling the practice, and giving some suggestions as to proceedings of this character in the Commissioner's Court, I have reviewed it generally, and touched upon points not strictly within the purview of the motion. I shall now order that the judgment of the Commissioner's Court be wholly reversed, and the case remanded for a new trial in accordance with the principles of this decision.